Thank you Judge Gould. The primary issue in this case is the propriety of the District Court's decision to introduce evidence of Mr. King's juvenile adjudication under Rule 414. The government has expended a great deal of time in its brief and appears to indicate that this issue is all but been decided under LeMay. The fact is though LeMay did not confront the specific issue in this case and that is whether or not under the terms of the Federal Juvenile Delinquency Act it was appropriate to reveal this prior adjudication. This court has recognized a number of different times that an essential purpose of the Federal Juvenile Delinquency Act is to protect the privacy of juvenile offenders. In fact one of the reasons why this court allows interlocutory appeals of transfer orders is because it recognizes that this important right would be given up if a juvenile was allowed to be transferred and could only then appeal after the decision is made. So for that reason under Section 5038A of the Act it states that throughout and upon completion of the juvenile delinquent proceedings the record of the juvenile shall be safeguarded from disclosure from unauthorized persons. It then goes on to set out for six different circumstances when a juvenile's name or picture or records of the proceeding can be made public. Those include when there's inquiries from a different court, when there's inquiries from a different probation agency, from law enforcement, national security matters, things of that nature. Nowhere in the Act. So your position is that that doesn't permit it to be disclosed in his own trial? It does not, Your Honor. Does that make sense? If you can give it to law enforcement, if you can to other agencies, you can't give it to a court that's trying? Well you can give it to law enforcement in two specific situations. That is if they're investigating a crime and number two if they're investigating the background of a person for job-related purposes. That's not disclosure to the public, however. Law enforcement has a wealth of information that's considered confidential that isn't made public and it also doesn't accord with the rehabilitative purposes of the Juvenile Delinquency Act. Let's not forget that whenever a juvenile appears, including Mr. King, because I represented Mr. King when he was a juvenile, one of the quid pro quos of the Juvenile Delinquency Act is that juveniles will be given certain privileges, will be treated in a certain way. In return they give up their rights to jury trial, to indictment, and things of that nature. Mr. King was no different than any other juvenile. When he went into court, the court ensured him that under the Juvenile Delinquency Act, the records, the proceedings would remain confidential and that was afforded him throughout the entire process. Juveniles can in fact waive the right to jury trial just as an adult. There's always a balancing process that's going on of do you want to waive important rights like a jury trial in return for the rehabilitative purposes, rehabilitative treatment of the Federal Juvenile Delinquency Act. In the reply brief, we discussed a little bit what was then a pending decision. That was in United States v. Juvenile Mail that came out just a couple weeks ago on the 25th, I believe it was. In that case, what this court did was weighed the confidentiality provisions of the Juvenile Delinquency Act with those of SORNA. The court determined, I think quite rightly, that SORNA conflicts with the Juvenile Delinquency Act. The question was, looking at the two statutes, is it fair to determine that Congress decided explicitly that SORNA would override the Federal Juvenile Delinquency Act. What this court decided is that in fact it did and that was looking at the terms of the statutes. Looking at the definition of conviction, for instance, under SORNA, Congress specifically concluded that certain sexual crimes are committed by a juvenile over the age of 14. In those instances, Congress determined that it would override the Federal Juvenile Delinquency Act in those limited circumstances. Well, I guess I'm just not quite sure how that helps you because your client is no longer a juvenile. But you kind of outlived the benefits that were conferred upon him while he was a juvenile. And I guess I respectfully disagree with you there, Judge Schroeder, because he, and there's case law, and I can put this in a 28J letter, but that once you're preceded against under the Federal Juvenile Delinquency Act, you don't outgrow it. No, I understand. I'm talking, I understand your argument on that. I was just saying that the case that we recently decided, I don't see how it particularly helps you. Well, I think it helps you from, I mean, remember, under juvenile mail, these guys are oftentimes adults, too, by the time they had to register under SORNA. So, in both cases, they're adults, so the question is whether or not their juvenile adjudication remains confidential. But the juvenile, the recent juvenile mail case that Judge Wardlaw wrote, that opinion, I think I'm on that panel. And I don't think it addressed the issue that's reasoned, that SORNA made an express exception or priority or, you know, pro-tanto repeal of whatever the FJ, the Federal Judicial Delinquency Act would have meant, so it didn't have to get to the issue you're raising. But part of the issue that we're raising here, though, too, is the statutory argument, as well as the constitutional argument. And I guess you, Judge Gould, are correct. Juvenile mail didn't explicitly, I mean, didn't deal at all with Rule 414 or Rule 415. I guess my point is, is that Congress knows how to override the explicit confidentiality provisions of the Juvenile Delinquency Act, which it did in SORNA. Okay, Mr. Ness, let me ask you, Mr. Ness, if I could ask you one question. In the Federal Judicial Delinquency Act, it has that exception about disclosure to a court. And what's the express statutory language on that? The express statutory language of disclosure to a court? A court. If you're, if you know, in other words, the first one being inquiries received from another court of law, I believe. The record shall be disclosed to the extent necessary to meet the following circumstances, with the first one being inquiries received from another court of law. Okay, good. Thank you. Do you want to reserve a couple of minutes for your? Yes, Judge. Thank you. You didn't even address the sentencing issue. And, Judge, I guess unless there's questions about that, I'll rest on my briefs on those issues. We'll give you an extra argument, extra couple of minutes in the argument. We had some questions on it. Go ahead. Oh, okay. Go ahead. May it please the Court, Bishop Grewell on behalf of the United States. Given that's what the Court's been talking about this morning, I guess I'll start with the use of the juvenile adjudication in the later, being introduced into evidence at the later adult hearing. Nothing in the Federal Juvenile Delinquency Act or in the earlier juvenile mail decision that was vacated suggests that what happened here is inappropriate. The Delinquency Act puts out very specific rules about how, what's maintained confidentially and how that's been confidentially. There was, there were no juvenile records released in this case. The only thing that was introduced was the fact of adjudication and the juvenile mail case. And his identity. And his identity. And the the three juveniles case that we cite in our brief and the AD case, both of which were actually cited in the vacated juvenile mail case, suggests that a court can have a juvenile adjudication actually be an open proceeding where all this information that would have had occurred during the juvenile adjudication would have been available to the public, although not in the sense where there's, where you could have necessarily searched on that information online, such as under a SORNA registration. So if that juvenile adjudication proceeding could be open and all that information could be available there, it simply wouldn't make any sense that the fact of that adjudication could no longer be used in a later adult proceeding. Those decisions also said that the judges, district court judges, have authority to put this, make this information available, which is, which is what occurred here. So I, the FJDA simply makes very specific restrictions, none of which were violated here. That's why we think what was done here was appropriate. Do you think this is covered by LeMay? I think the, LeMay was in fact a state juvenile proceeding, so I agree with the the appellant that the Federal Juvenile Defense Act was not addressed in that particular case, but in terms of all the balancing that needs to occur when you're using a prior juvenile proceeding and you're going to use it for propensity under Federal Rule of Evidence 414, I think they are applicable in this case. So the district court, as I understand it, did look to the LeMay factors, right? It did, and in our brief, we suggest that he only found three in our favor, but he actually found all five in our favor. That's a mistake in the motion of LeMay. He found that the time between the two, the conviction, the juvenile adjudication and the actual conviction, for the vast majority of that time, the defendant was actually detained or in prison, so he was in prison until April of 2007. A month later, he was he was dating a minor who that he had then impregnated. He was, his supervised release was revoked, so for three months during that one year between when he got out and when he committed these offenses, he was detained. So the frequency, there simply wasn't a lot of time for him to commit other violations or for there to be interfering circumstances, and that's why the court found those factors weighed in our favor. The similarity between the cases, in all the cases, was that there was a minor of the same sex involved, and it's important in both cases, because in the child, the received child pornography case, he claimed that he was not the one at the computer, so it's important to be able to show his propensity. In the sexual assault of a minor, he claimed he hadn't done it, so it was once again important to show the propensity. So for that reason, we think the conviction should be affirmed. To the sentencing issues, the vast majority of them I will leave to the briefs, but the one I thought that maybe I should address is his challenge to the counting, the counting grouping. He calls it grouping, I think what he actually probably means is counting under 3d 1.4 as opposed to the... Well, isn't it true that if the sentencing guidelines were mandatory, he would have received a less severe sentence than if they're treated as they were here, as advisory, because he would have... The 3d 1.2 provides that local counts should be grouped if they involve substantially the same harm, and then when one of the counts embodies conduct that is treated as a specific offense characteristic, that would, in this case, count... If the guidelines were strictly construed, count 1 and 2 would be grouped, and he would be looking at a sentence of between 210 and 262 months as opposed to the 365 month sentence. I don't think that's correct for a couple of reasons. First of all, as we note in the brief, there were separate trials and these were sentenced on separate dates. They were separate trials because the judge chose to have the trial spent separately. He did because 30 days before the second count was set, but... I understand that, but that, so that technicality adds ten years to the sentence. Well, and to the ten years of the sentence, I don't think the calculation here is actually correct, that it adds nine or ten years, if they had been counted together. I don't think they would have been grouped together because we had a different act, different victim, but I think then you get to the counting under 3D1.4, you would have had a base offense level of 18 on the sex offense assault of the minor. It ended up being 29 at the prior sensing because of the Chapter 4 enhancement, but the Chapter 4 enhancement has to be applied after counting and grouping because Chapter 3 comes before that. So you have an 18 and then you'd have a 33 for the assault pornography. When you look at the counting, at that point, because the 18 is more than nine levels below the 33, he actually wouldn't get a unit for that. So I think after he did the counting, he'd actually still be at a level 33, not the 35. But then when we moved to 4B1.5, he received that enhancement as first sentencing. He actually objected to it because he said the prior was a juvenile adjudication and it shouldn't have been counted as a conviction. Our position is he's forfeited that, but even if we give that to him, you then get under 4B1.5B. You would add five levels, he'd be at 38. His criminal history would be lower because the judge here used the sexual assault of a minor as criminal history when he sentenced on the received child pornography. So that would have given him a criminal history 2 instead of criminal history 3. So we'd be looking at... with a criminal history of 2, which is 262 to 327 months. The judge here ended up sentencing 38 months over that top guideline offense. If he had wanted to, if this had been before, if he'd sentenced them together, he could have easily varied up that way. It's clear he probably would have given the recidivism here, the non-responsiveness to prior sexual treatment. But he didn't have to because they were sentenced on separate days. You have a 20-year-old fellow that's sentenced to 30 years in prison. Is that a substantially reasonable sentence? I think so when you take his recidivism, his non-responsiveness to sexual offender treatment, the fact that we even have other crimes that's in the PSR but that were not charged dealing with minors, and the district court had a concern that it needed to protect the public given his repeated recidivism. But as I point out, there was only one case that I found on point regarding the separate trials. It's not cited in our brief. It's United States v. Chavez from the Sixth Circuit, 296 F. 3rd, 450, page 464, footnote 2, says when you have these separate trials that it can lead to getting a higher sentence. But I just, the separate trials thing, that was the judge who decided to do the trial separately. They were indicted in the same count. Certainly, and if he had wanted to, he could have certainly moved to continue the sentencing until after the second trial was completed and then moved to consolidate the two sentencings. He could have also moved to have the two trials together. He wouldn't have done that because it's a receipt of child pornography, so there's no way he wanted that to be with his sexual assault of a minor. If the judge had not sua sponte done what it did here, I'm pretty sure he probably would have moved to sever himself. Maybe, unless he was aware of the sentencing impact, which adds 10 years to a sentence. And in which case, he could have made these, he could have made his objection when the judge actually could have done something. He objected at the second sentencing when it was too late to do anything. And so I, even if the court felt there was error here, I don't think it's plain error. And I don't think when you do the... What point did he raise the objection to there having been two trials? He raised, he said at the second sentencing that the two should be counted together. And actually, he said grouped, which confused the judge and the U.S. attorney who then talked about grouping instead of counting and said different victims, different offenses. And so it shouldn't be grouped, and the judge went along with that. So are you saying that because there were two trials, they should not be grouped? But had there been one, let's just say, had there been one trial, count one and count two as they were indicted together, would that have impacted his sentence? Possibly. My belief is that the, if you calculate the guidelines correctly at that point, because the hands-on offense is now with receipt of child pornography and you get the 4B1.5, at the very least, the B enhancement, you would have a guideline range of 262 to 327 months, which is 38 months, the high end is 38 months below what he in fact received. And given the court's clear record of its concern about his non-responsiveness to treatment, his recidivism and its need to protect the public, I think that the court could have varied upward from that and been easily affirmed as a substantively reasonable sentence. Okay. Thank you. Okay. I think your time is probably up. Thank you, Your Honor. Unless other judges have questions, we should permit them. Let's study this. Okay. Now, Stacy, could you add a minute or two on to the, add two minutes here for... Thank you, Judge Gould. With regard to the sentencing... You were the trial... No, no, I was not. Actually, it was my colleague, Hank Branham. And the court is right. I mean, the indictment was amended just shortly before the first trial and the district court, sua sponte, then severed the trial. And as a result of that, even if the government's calculation is correct, Mr. King was looking at a top-end guideline sentence 38 months below what he received, and he didn't receive the top-end of the guidelines on the second sentence. So even by that calculation, we're talking three years. And I think, Judge Beislein, you're correct. Beislein. Beislein. I'm sorry. I'm sorry. Judge Beislein, I think you are correct that these sentences should have been grouped, and his sentence would have been substantially lower. Under Section 3D1.2c, sentences should be grouped when one of the counts embodies conduct that is treated as a specific offense characteristic or other adjustment to the guideline applicable to another of the other counts. And certainly, at least the first conviction for statutory rape did affect the offense, both the offense level and the criminal history category in the second offense. So I think as a result of that, Mr. King was looking at 30-some-odd years as opposed to a number of years below that. Still looking at 21 years. 21 years, which is a long time by any stretch of the imagination. And as the court stated, he's 20 years old at this point, or 21 or so. So. Well, was there a tactical and strategic advantage to him, though, to have the two crimes separated so that he wasn't charged with the assault in the same trial if he was charged with the pornography? No, Judge Schroeder, I don't think so, necessarily, because the assault charge was used under Rule 414 in the second trial anyway. So I don't know what strategic advantage he had to sever that. I think it was done by the district court. The only potential strategic advantage is I think there was less than 30 days left for him to get ready for the child pornography trial, but that could have easily been remedied by just continuing them both and trying them both. So I just, I don't see any strategic advantage to Mr. King severing out these two counts. Unless there are any other questions. Okay. I have no questions. Hearing none from my colleagues, we'll say this case shall be submitted. And I thank Mr. Ness and Mr. Brewer for your fine arguments. And thanks for coming all the way from Montana to see us.
judges: Beistline, Schroeder, Gould